IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTIAN KOELSCH,** | : | |
|     **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **THE COUNTY OF LANCASTER, et al.,** | : | **No. 11-5681** |
|     **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                                           **September 25, 2012**

      Christian Koelsch claims that he was unlawfully jailed by Defendants after a judge in Lancaster County ordered his release on parole. He sued Lancaster County as well as a number of officials of the Lancaster County Adult Probation and Parole Services, including Mark Wilson, the Director; James Hansberry, the Program Director; Theresa Miller-Landon, a Division Director of Special Supervision; and Karen Andreadis, Supervisor of the Pre-Parole Unit. Defendants have moved for summary judgment, arguing that they did not violate Koelsch's Eighth Amendment right to be free from cruel and unusual punishment or his Fourteenth Amendment Due Process rights. They also contend they are entitled to qualified immunity. The Court agrees that Koelsch has failed to show that his continued detention violated his rights and will therefore grant Defendants' motion for summary judgment.

**I.      BACKGROUND**

      On May 19, 2010, Koelsch pled guilty to one count of misdemeanor retail theft. (Defs.' Mot. for Summ. J. Ex. A [Lancaster County Docket Sheet].) He was sentenced to two years of probation and a fine. (*Id.* at Ex. E [Pet. to Issue Capias and Bench Warrant].) However, as a result of an

altercation with his father in which a protection from abuse order was entered against Koelsch, his probation was revoked. (*Id.*; Defs.' Statement of Undisputed Material Facts [Defs.' SOF] ¶¶ 2-6.) Judge Jeffrey Reich of the Lancaster County Court of Common Pleas sentenced Koelsch to a prison term of three months to twenty-three months. (Defs.' Mot. for Summ. J. Ex. F [Sentence Sheet].) The Sentence Sheet directs that Koelsch was eligible for parole upon completion of a Special Offenders Services (SOS)/psychiatric evaluation and a parole plan. (*Id.*) A parole plan requires an approved address, the signature of a probation officer, and a signature of the parolee accepting the rules and regulations of the probation and parole office. (*Id.* Ex. J. [Andreadis Dep.] at 33; *id.* Ex. L [Hansberry Dep.] at 81; *id.* Ex. O [Miller-Landon Dep.] at 62-63.) The pre-parole unit is responsible for developing the parole plan. (Andreadis Dep. at 34.)

If an inmate was "at [his or her] parole date," had a verified address to live, and met all court-ordered conditions in the sentencing order, the inmate was eligible for a petition for parole. (*Id.* at 13-14.) In the event of uncertainty regarding whether an inmate met a particular condition specified in the sentencing sheet for parole, Andreadis would seek clarification from the judge by emailing the judge's secretary. (*Id.* at 16.) Neither an inmate nor his or her counsel is necessarily made aware that a parole official has sought clarification from the judge, though there are times when one or both individuals are made aware. (*Id.* at 22-23.)

Koelsch's parole eligibility date was February 27, 2011. (*Id.* at 32.) On February 3, 2011, Andreadis emailed Ruth Markley, Judge Reich's secretary, seeking clarification of Koelsch's parole status. She wrote, "Public Defender Strasznski is telling the Pre-parole Unit that [Koelsch] can be released prior to 2/27/11 as long as the psychiatric eval is complete. I am looking for clarification from Judge Reich. Can you please tell me if this is the Judge's intention?" (Defs.' Mot. for Summ.

J. Ex. G [Andreadis email].) Markley responded, "Judge Reich says he agrees that he should be released to parole upon completion of his Psychiatric Evaluation as long as his treatment/parole plan is in place and it was determined that he is not a risk to others." (*Id.*) Despite this clarification, Andreadis remained uncertain about the Judge's "risk to others," statement, so she sought guidance from her supervisors. (Andreadis Dep. at 43.) Koelsch contacted Miller-Landon, Division Director of Special Supervision in Adult Probation and Parole Services, about how best to decide whether Koelsch's release would be a threat to community safety. (Miller-Landon Dep. at 17.) Miller-Landon then reviewed Dr. Jerome Gottlieb's psychiatric evaluation of Koelsch and noted that he suggested a psychological evaluation for Koelsch. (*Id.*) Miller-Landon suggested to Andreadis that the recommended psychological evaluation of Koelsch be conducted. (*Id.* at 17, 34.) Hansberry, who at the time of Koelsch's imprisonment was a Division Director for Adult Probation and Parole Services of the Lancaster County Courts, became involved with Koelsch's case in early February, 2011, when Andreadis and Miller-Landon came to him with information about Koelsch. (Hansberry Dep. at 7, 32-34.) Andreadis was unsure about how to proceed to ensure Koelsch was not a threat and Miller-Landon came to him with "disturbing information about [Koelsch's] conduct and behavior." (*Id*. at 32-34.) As a result, Miller-Landon and Hansberry went to Judge Reich's chambers for additional clarification. (Andreadis Dep. at 44-45; Miller-Landon Dep. at 34.) At that meeting, Judge Reich ordered a psychological evaluation prior to Koelsch's release. (Andreadis Dep. at 45-46; Defs.' Mot. for Summ. J. Ex. Q [Feb. 10, 2011 Hansberry email] ("Today Teri and I met with Judge Reich who indicated he wants Koelsch to remain in [Lancaster County Prison] until he has the psychological eval that was recommended by Dr. Gottlieb.").)

On February 14, 2011, Hansberry emailed numerous individuals about his meeting with

Miller-Landon, and Judge Reich. According to Hansberry, Judge Reich instructed that Koelsch was to remain in jail until he had a psychological evaluation from Dr. Jerome Gottlieb. (Defs.' Mot. for Summ. J. Ex. K [Rivera Notes]; *see also* Miller-Landon Dep. at 54 ("The first meeting with the judge would have been February 14, when we requested that the psychological be completed prior to his release.").)[1]

Sometime around March 11, 2011, Cory Miller filed a petition for early parole on behalf of his client, Koelsch. (Defs.' SOF ¶ 23.) According to the petition, the Pre-Parole Unit told him that Koelsch "did not have a steady address required to comply with the Parole Plan." (Defs.' Mot. for Summ. J. Ex. R [Early Parole Pet.] ¶ 5.) The petition further averred that Koelsch was a professional football player and that Koelsch's agent informed Miller that Koelsch earned a roster spot on the Harrisburg Stampede, a semiprofessional football team. (*Id.* ¶ 7.) Koelsch's spot on the team was jeopardized due to his incarceration. (*Id.*) The petition also claimed that Koelsch was permitted to live at the home of a friend's mother in Ephrata, Pennsylvania. (*Id.* ¶ 10.)

On March 11, 2011, Judge Reich issued an order, "upon consideration of the within Petition for Early Parole made by attorney Cory J. Miller," that directed that Koelsch "be paroled immediately subject to a Parole Plan and the rules and regulation of the Lancaster County Prison to any outstanding detainers. Defendant is further ordered to follow through with his scheduled psychological evaluation upon release and complete any treatment prescribed." (Defs.' Mot. for Summ. J. Ex. S [Judge Reich's Mar. 11, 2011 Order].)

Hansberry testified that his office learned that Koelsch did not have a job with the Stampede.

---

[1] This first meeting with Judge Reich actually occurred on February 10, 2011. (Miller-Landon Dep. at 55.)

(Hansberry Dep. at 48; Miller-Landon Dep. at 41.) He therefore asked Miller to meet him and Miller-Landon in Judge Reich's chambers. (Hansberry Dep. at 48; Miller-Landon Dep. at 41.) During the off-the-record meeting, which occurred on March 11, 2011, but after Judge Reich's order of that date, Judge Reich told the participants that he remained concerned that Koelsch was a threat to the public and that Koelsch was not to be released until an adequate parole plan was in place. (Hansberry Dep. at 49, 71, 78; *see also* Miller-Landon Dep. at 41 ("At that time we went back to Judge Reich, Mr. Hansberry and I went back to Judge Reich with Cory Miller and stated we can't confirm this and the judge said that he cannot be released."), 54, 56.) The notes from Koelsch's file indicate that Hansberry sent an email to Andreadis and Miller-Landon, among others, that stated, "Cory Miller and I just met with Judge Reich. The parole is not to go forward due to the fact that employment that was represented as requiring a release today is not, in fact, a possibility at present. A parole plan cannot be completed because we do not approve of the address provided at present nor is there employment with the Harrisburg Stampede." (Rivera's Notes.)

According to Andreadis, Koelsch was not released as of March 17, 2011, although the psychological evaluation was completed on that date, because he did not have a verified and approved address for his parole plan. (Andreadis Dep. at 48-49, 52-53, 61-63, 65, 71, 81, 85, 89; *see also* Hansberry Dep. at 35, 58, 70.) Hansberry testified that Koelsch remained in prison from March 17, 2011, until April 13, 2011, because officers of the unit were attempting to verify an address Koelsch had provided to them. (Hansberry Dep. at 59.) Prior to his release, Koelsch had provided the pre-parole unit with two addresses. The first address was not approved because there were weapons and ammunition in the home. (*Id.* at 82.) One of the Probation and Parole Unit's rules is that a parolee may not live in a home with weapons. (Andreadis Dep. at 55; Hansberry Dep. at 89-

90.) He also provided a second address in Ephrata, but the resident there did not want Koelsch to live at the home. (Andreadis Dep. at 55.) The woman that lived in the home Koelsch sought approval for reported that she "changed her mind and stated that she no longer wished to have Mr. Koelsch reside with her. She stated that she does not know enough about Mr. Koelsch's background, and she doesn't feel as though she could trust him in her home." (Defs.' Mot. for Summ. J. Ex. P [Chasity Pruner's Notes]; Rivera's Notes.)

On April 8, 2011, Koelsch said that he wanted to be released to the Water Street Mission. (Rivera's Notes.) The Water Street Mission is a homeless shelter to which Koelsch could have been paroled. (Andreadis Dep. at 71-72.) Andreadis had not previously told Koelsch that the Water Street Mission was an acceptable address for him to reside upon release. (*Id.* at 72.) On April 12, 2011, Judge Reich again signed an order that stated that Koelsch "shall be paroled immediately subject to the rules and regulations of the Lancaster County Prison, and a parole plan which will include participation in any psychiatric or psychological counseling as deemed necessary." (Defs.' Mot. for Summ. J. Ex. U [Judge Reich's Apr. 12, 2012 Order].) On April 13, 2011, Andreadis saw, for the first time, the April 12, 2011 order from Judge Reich. (Andreadis Dep. at 70.) Also on April 13, 2011, Andreadis met with Koelsch and had him sign the mandated rules and regulations, approved Koelsch's address at the Water Street Mission, set up his appointment with his parole officer, and released him. (Andreadis Dep. at 70-71, 73-74.)

Andreadis conceded that if Koelsch had previously informed probation and parole or the pre-parole unit that he wanted to live at the Water Street Mission, he would have been released. (*Id.* at 80-81, 92.) She also admitted that the county never informed Koelsch that the Water Street Mission was an option for him. (*Id.* at 80-82.) Hansberry testified that there was an expectation that Koelsch

would be informed that he could reside at the Water Street Mission. (Hansberry Dep. at 39-40.)

Miller-Landon testified that it would be proper for the Pre-Parole Unit to assist inmates in finding suitable living arrangements, including suggesting suitable housing for an inmate. (Miller-Landon Dep. at 9-10.) The unit does not "go out and find housing," however. (*Id.* at 9, 37-38, 60-61.)

**II.      STANDARD OF REVIEW**

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 32 F.3d 768, 777 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.     DISCUSSION**

Koelsch objects to his continued detention beyond March 11, 2011. As an initial matter,

Defendants seek to defeat Koelsch's claims by arguing that they fail as a matter of law because Koelsch was not incarcerated beyond the maximum date of his sentence. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. at 5-6.) As a matter of law, Defendants are correct that neither the Due Process Clause of the United States Constitution nor Pennsylvania law recognizes a protected liberty interest in a prisoner being granted parole prior to the expiration of the prisoner's maximum sentence. *See Wicker v. Pa. Bd. of Prob. & Parole*, Civ. A. No. 09-167, 2010 WL 1253498, at *5 (M.D. Pa. Mar. 24, 2010). But the Court does not believe that this statement of law addresses Plaintiff's argument. Plaintiff does not contend that he had a right to parole but rather that, once he was granted parole, he had a right to be released. The Court understands Koelsch's claim to be that once a judge ordered him freed, his continued detention violated his constitutional rights. The Court will therefore not grant summary judgment to Defendants on the grounds that Koelsch had no right to be paroled prior to maximum date of his sentence.

Rather, this Court will treat this case as one in which Koelsch was imprisoned beyond the term of his sentence. Imprisonment beyond the terms of an inmate's sentence is "punishment" under the Eighth Amendment. *Sample v. Diecks*, 885 F.2d 1099, 1108 (3d Cir. 1989). The Eighth Amendment prohibits punishments "totally without penological justification." *Id.* However, there is no liability for holding an inmate beyond the term of his sentence absent a showing of deliberate indifference on the part of a defendant to whether the plaintiff suffers an unjustified deprivation of liberty. *Id.* at 1110. To establish a § 1983 claim for incarceration without penological justification, a plaintiff must show: (1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the

problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention. *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010).

### A.      Should Koelsch Have Been Released on March 11, 2011?

It is undisputed that on March 11, 2011, Judge Reich ordered Koelsch "paroled immediately subject to a Parole Plan and the rules and regulations of the Lancaster County Prison to any outstanding detainers." (Judge Reich's Mar. 11, 2011 Order.) It is further undisputed that a parole plan for Koelsch was required to include an approved address, which he did not have as of March 11, 2011. Indeed, Koelsch's petition for early parole recognizes the need for Koelsch to have an approved residence. (Early Parole Pet. ¶ 10.) Finally, it is undisputed that Judge Reich, during a conference in which Koelsch's lawyer was present, verbally ordered that Koelsch was not to be released on March 11, 2011.

According to Koelsch, Judge Reich ordered Koelsch's release "immediately" and that order is unambiguous. (Br. of Pl. in Opp'n to Mot. of Defs. for Summ. J. [Pl.'s Resp.] at 5.) But Judge Reich's order stated that Koelsch's was to be paroled immediately "subject to a Parole Plan and the rules and regulations of the Lancaster County Prison." (Judge Reich's Mar. 11, 2011 Order.) Plaintiff cannot ignore the conditions precedent to Koelsch's immediate release. The Court concludes that Defendants were therefore not at liberty to free Koelsch on that date and that they acted reasonably in refusing to do so. Koelsch believes that Defendants were free to ignore Judge Reich's directive because it was a "purported verbal order." (Pl.'s Resp. at 5.) It is undisputed that Judge Reich met with Hansberry, Miller-Landon, and Koelsch's lawyer, Miller, after Judge Reich signed the March 11, 2011 order. It is also undisputed that following that meeting, Defendants understood that Koelsch

9

was not to be paroled. Based on the record before this Court, that understanding was reasonable. Plaintiff cites no basis to support its contention that Defendants, having received a command from a judge that a prisoner was not to be released until an approved parole plan was in place, were free to walk out of the judge's chambers and ignore that command.

### B.     Failure to Recommend the Water Street Mission as an Approved Residence

Plaintiff asserts that his Sentence Sheet contains an unchecked box next to the pre-printed option "Must have verifiable residence and complete parole plan prior to being paroled." (Pl.'s Resp. at 5 (citing Sentence Sheet).) If the Court is to infer from this assertion that a verifiable address was not required prior to Koelsch's release, the Court rejects this inference. Judge Reich ordered Koelsch released subject to a parole plan. Furthermore, the testimony is uncontested that in Koelsch's case, his parole plan required an approved residence. The Sentence Sheet included a handwritten notation requiring a parole plan for Koelsch. Finally, as noted previously, Koelsch's own attorney recognized that Koelsch was required to have an approved residence. Stripped to its essence, therefore, Plaintiff's argument is that the only thing keeping him in jail was an approved address and Defendants kept that information from him. (Pl.'s Resp. at 5 ("Third, even if Plaintiff was required to have a verifiable residence, the Defendants knew all along that he had one available to him but continued to use the lack of a verifiable residence as an excuse for refusing to release him.").) That is, Defendants held the key to Koelsch's freedom, knew they held the key, and deliberately held it from his outstretched grasp. But nowhere is there a legal requirement that Defendants must flood the Water Street Mission with parolees. The homeless shelter is not a default residence to ensure that inmates are paroled early. Koelsch provided two addresses, both of which were rejected for valid reasons. At that point Koelsch said he would go to a homeless shelter. He could have said that

immediately, but the Court will not place upon localities the burden of placing parolees in homeless shelters or risk facing civil rights lawsuits. Had the county wrongfully and unreasonably withheld approval after Koelsch said that he would live at the homeless shelter or wrongfully and unreasonably refused to investigate Koelsch's housing requests, including the homeless shelter, that would be a different question. But the Court will not create a constitutional right that a parolee be informed that he may stay at a homeless shelter. The Court will also not conclude that Defendants displayed deliberate indifference towards Koelsch by failing to immediately inform him of the possibility that he could live at the Water Street Mission.

### C. Was Koelsch Wrongly Detained for an Additional Night?

Judge Reich signed an order on April 12, 2011 directing that Koelsch be "paroled immediately subject to the rules and regulations of the Lancaster County Prison, and a parole plan which will include participation in any psychiatric or psychological counseling as deemed necessary." (Judge Reich's Apr. 12, 2011 Order.) According to Koelsch, he was nonetheless "inexplicably held . . . for an additional night." (Pl.'s Resp. at 6.)

The Court cannot say that Koelsch's detention from the date of Judge Reich's order on April 12, 2011 until Koelsch's release on April 13, 2011 violated the Eighth Amendment. The April 12, 2011 Order was issued at 4:44 p.m. and was apparently faxed to the prison at 4:57 p.m. on April 12, 2011. Andreadis testified that she did not see the order until April 13, 2011, and it was on that day that she approved Koelsch's decision to go to the Water Street Mission, thereby satisfying all conditions necessary to secure his release. As a matter of law, Koelsch's detention from April 12, 2011 until April 13, 2011 was not "totally without penological justification."

Finally, the Court notes that throughout Koelsch's ordeal, Lancaster County prison officials

continued to work on Koelsch's case to ensure that Koelsch was not released until all conditions of his parole were met. Defendants met with Judge Reich to clarify his order, discussed Koelsch's case with supervisors and sought guidance for how best to proceed, and followed up with the residents of the homes in which Koelsch sought to live. Finally, when he informed officials that he would go to the shelter, Koelsch was released from jail because he had complied with the conditions required for his release. *See Montanez*, 603 F.3d at 254. The record is thus clear that Defendants were not deliberately indifferent to Plaintiff suffering a wrongful deprivation of his liberty. *See McSpadden v. Wolfe*, Civ. A. No. 07-1263, 2008 WL 910010, at *12 (E.D. Pa. Apr. 2, 2008) (concluding that no deliberate indifference existed when prison officials responded to the plaintiff's questions and took affirmative steps to resolve confusion about prisoner's release date).

### D. The Fourteenth Amendment Claim

As an inmate imprisoned beyond his scheduled release date, Koelsch properly brought a claim under the Eighth Amendment's bar against cruel and unusual punishment. A substantive due process claim for the same conduct is barred by the "more-specific-provision rule." Under the rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see Bosold v. Warden, SCI-Somerset*, Civ. A. No. 11-4292, 2011 WL 6812902, at *6 (E.D. Pa. Dec. 28, 2011).

Koelsch also argues that his Fourteenth Amendment Due Process rights were violated because his parole was revoked without a hearing. (Pl.'s Resp. at 8-9.) Even if Koelsch could bring a claim not covered by the Eighth Amendment, Koelsch's parole was not revoked. Rather, he failed

to satisfy the conditions that would have led to his release. Thus, he has failed to show that he was wrongly detained and any Fourteenth Amendment claim must also fail.

## IV.     CONCLUSION

One realizes the preciousness of freedom when it is taken away by the government. Even a moment wrongly deprived of freedom is antithetical to a free society. This Court would not hesitate to let Koelsch's case proceed if he raised a genuine issue of material fact that supported his claim that he was deprived of his constitutional rights. But within the interstices of the law, well-intentioned people charged with carrying out the orders of judges must interpret those orders while ensuring that the public remains safe and that individuals such as Koelsch have their rights respected. Based on the record before this Court, Koelsch has failed to establish a constitutional violation.

The undisputed facts relevant here are: (1) Koelsch could not be paroled until he had an approved parole plan; (2) his parole plan would not be approved until he had an approved place to live upon release; and (3) Koelsch did not have an approved address until April 13, 2011. Couple these facts with the Court's conclusion that the mere fact that the county did not inform Koelsch that he could have lived at the Water Street Mission did not violate Koelsch's rights, and there is no basis to assign liability to Defendants. An Order consistent with this Memorandum will be docketed separately.